Alfred G. Moitozo and Lillian L. Moitozo v. Commissioner.
Moitozo v. Commissioner
Docket No. 86475.
United States Tax Court
T.C. Memo 1962-15; 1962 Tax Ct. Memo LEXIS 292; 21 T.C.M. (CCH) 74; T.C.M. (RIA) 62015; January 29, 1962
Francis, T. Meagher, Esq., for the petitioners. Norton L. Armour, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in petitioners' income tax for the year 1957 in the amount of $1,722.99. Petitioner Alfred G. Moitozo held a 32 percent interest in a partnership. *293 The issue is whether in the year 1957 he held this interest 6 1/2 months or 11 months, or, as related to his income, whether he was required to report 6 1/2 twelfths or 11 twelfths of 32 percent of the partnership income. Findings of Fact Petitioners are husband and wife, residing in Taunton, Massachusetts. They filed their joint income tax return for 1957 with the district director of internal revenue at Boston, Massachusetts. In 1955 Moitozo, Albert S. Dias, Arnold E. Oakes and Richard A. Oakes entered into a partnership known as Di-Mo Tool Co. and Di-Mo Mfg. Co. The business of the partnership was primarily the manufacture of plastic molds. The articles of partnership provided petitioner, Dias and Arnold E. Oakes were to each have a 32 percent interest and were each to devote full time to the partnership business. Richard A. Oakes was to have a 4 percent interest and devote a minimum of 45 hours a month to the business. The said articles contained the following clauses: * * *
FIRST: The said partnership is to continue until mutual consent to dissolve. If any one partner desires to sell out he must first offer equally to remaining partners. * * *
FIFTH: A systematic *294 record of all transactions is to be kept in a double entry set of books which are to be open for the inspection of each partner. * * *
SEVENTH: Each partner's salary is to be governed by the volume of business, the same to be withdrawn at such time or times as he may elect. No partner is to withdraw from the business an amount in excess of the agreed salary without the written consent of the other. EIGHT: The duties of each partner are defined as follows: Alfred G. Moitozo - Toolmaker & Supervision and Customer Contact. Albert S. Dias - Toolmaking & Supervision & Customer Contact. Arnold E. Oakes - Engineering and Customer Contact and Supervision. Richard A. Oakes - Administrative - Office. The above duties shall be followed in the order given. NINTH: In case of death, incapacity, or withdrawal of any partner, the business is to be conducted for the remainder of the fiscal year by the surviving partners, the profits for the year allocated to the withdrawing partner to be determined by the ratio of the time he was a partner during the year to the whole year. The partnership business proceeded during the years 1955 and 1956 and up until July 16, 1957 with Moitozo devoting *295 full time to the partnership business and drawing a salary of $125 a week. On July 16, 1957 Moitozo's attorney, George Gomes, sent a letter by certified mail to the three other partners stating: Please be advised that I represent your partner, Mr. Alfred G. Moitozo, in all matters concerning his interest in the subject firm. Certain recent intolerable behavior of at least one of the partners apparently acquiesced in by the rest make it impossible for him to continue in the firm. Accordingly, I am authorized to offer his interest to the other partners under paragraph #1. of the Articles of Partnership dated January 29, 1955. In order to determine the value of his interest it will become necessary to exercise his right to inspect the books under paragraph #5. of the Articles. You will please make available to me the general ledger and all books of original entry. Under the circumstances above set forth, in the best interests of the firm as well as the individuals, I have advised Mr. Moitozo to absent himself from the plant pending negotiations. You will please negotiate with this office exclusively in this regard. Moitozo after July 16, 1957 performed no further services for *296 the partnership and did not draw any weekly salary. On August 4, 1957 Moitozo went to work for the New England Tool and Die Company, which was a competitor of Di-Mo Tool Co. and Di-Mo Mfg. Co. On October 5 and October 11, 1957 Moitozo caused a NOTICE to be published in The Taunton Daily Gazette, which stated: NOTICE Di-Mo Tool Company and Di-Mo Mfg. Company, Everett St. and Route 44-Harding St., Middleboro, Massachusetts. Notice is hereby given that the partnership between Alfred G. Moitoza [Moitozo] Albert S. Dias, Arnold E. Oakes, and Richard A. Oakes, doing business under the above captioned firm names was dissolved on July 16, 1957, so far as relates to the said Alfred G. Moitoza [Moitozo]. The July 16, 1957 letter from Gomes was answered by Benjamin A. Friedman, an attorney representing the other three partners. Friedman's answer expressed his willingness to hold a conference with Moitozo's attorney and see if they could come to terms and settle the controversy between their clients "in an amicable way." Thereafter the controversy between Moitozo and the other three partners was handled entirely by their attorneys and there were no communications or conferences between *297 Moitozo and the other partners. By letter dated August 19, 1957, Gomes, in a letter to Friedman, stated as follows: With respect to the above captioned partnership and the wrongful expulsion therefrom of Alfred G. Moitoza [Moitozo] by the other partners; Whereas notice of his desire to sell was given to the other partners under the terms of the partnership agreement on July 18, 1957 and whereas our negotiations to determine his interest have failed, I propose that the price be fixed by arbitration. Kindly contact me to arrange details. There were further conferences between the attorneys. Finally, in November 1957, Gomes told Friedman that his client needed money rather badly and he would sell his partnership interest for $14,000. Friedman consulted with his clients and after gaining their acceptance the deal was arranged for closing out Moitozo's interest for the sum of $14,000 with payment of $5,000 cash and the joint and several note of the other partners for $9,000. The attorneys prepared an agreement which is entitled "Dissolution Deed" which all four partners and their wives executed on December 2, 1957. This agreement calls Moitozo the retiring partner, and Dias, *298 Arnold E. Oakes and Richard A. Oakes, the continuing partners. It recites that the retiring partner should receive the amount due him for his share of the capital and business and it is agreed that he should withdraw and leave the continuing partners to carry on the business. It states that "valuations and estimates" of the property and assets of the partnership have been made and after deducting debts and liabilities "32% share of the retiring partner has been fixed and agreed at the sum of fourteen thousand and 00/100 dollars." It then states: In pursuance of the said agreement and in consideration of the premises, the parties hereto dissolve and terminate as and from the second day of December, 1957 the partnership heretofore subsisting between them in the business aforesaid. * * * The agreement goes on to provide for the giving of notice of the dissolution and of the intended continuing of the business by the continuing partners. It specifically releases the retiring partner from all claims and from all clauses recited in the original partnership indenture. However, an amendment to this release clause was executed by the parties on the same day for the purpose of continuing *299 Moitozo's liability for a few personal purchases by Moitozo since July 12, 1957 on the credit card of the partnership. The partnership return of income for the period ended December 31, 1957 reported net income of $53,200.75. Moitozo's 32 percent interest for a full year would be $17,024.24. The partnership return showed allocation of 11/12 of the latter amount, or $15,606.56 to Moitozo, on the theory that he was a partner until December 2, 1957. Moitozo on his income tax return for 1957 reported 6 1/2 twelfths of the $17,024.24, or $9,221.46 and attached a note to his return explaining he had withdrawn from the partnership on July 16, 1957 and hence was chargeable with only 6 1/2 twelfths of the 32 percent of 1957 partnership net profit. Respondent's determination that Moitozo's distributable share of the partnership income was $15,605.56 * as the partnership reported, gives rise to the deficiency now in question. Opinion A partner in determining his income must take into account his distributive share of the partnership's net income whether distributed *300 or not. Section 702(a), Internal Revenue Code of 1954; Section 1.702-1(a), Income Tax Regs. A withdrawing partner is chargeable with ordinary income on his share of partnership profits up to the time of his withdrawal. George F. Johnson, 21 T.C. 733; Section 1.706-1(c)(2)(ii), Income Tax Regs. Partnership profits may be distributed in whatever proportions as may be agreed upon by the partners. It is admitted here the partnership profits for the year of withdrawal of petitioner (1957) are to be allocated to petitioner in the proportion that the time during the year he was a partner bears to the whole year. The only issue here is the extent of time during the year 1957 that Moitozo was a partner. He contends it was six and one-half months or until July 16, 1957, when he ceased all activities in connection with the partnership business. Respondent contends it was 11 months, or until December 2, 1957 when the Dissolution Deed was executed by all four of the original partners. The partnership agreement provided it was to continue "until mutual consent to dissolve." For income tax purposes a withdrawing *301 partner's interest in an existing partnership continues "until his interest in the partnership has been completely liquidated." Section 1.736-1(a)(1)(ii), Income Tax Regs.
There was no mutual consent to dissolve or any liquidation of Moitozo's partnership interest until the Dissolution Deed of December 2, 1957. Petitioner's actions prior to that time such as ceasing to work for the partnership on and after July 16, 1957, putting the notice in the paper that the partnership was dissolved "so far as [it] relates to Alfred G. Moitozo" and accepting employment with a competitor, do not amount to a unilateral dissolution for income tax purposes. However the evidence that is fatal to Moitozo's contention is the Dissolution Deed of December 2, 1957. There petitioner is referred to as the retiring partner and he agreed that the value of his 32 percent interest was $14,000 and that the result of the agreement was to"dissolve and terminate as and from the second of December, 1957 the partnership heretofore subsisting between them." This dissolution deed is clear and unambiguous. Moitozo's interest in the partnership was not terminated earlier than this instrument. *302 We find no error in the deficiency. Decision will be entered for the respondent. Footnotes
*. No explanation is given for the one dollar difference between this amount and the amount stated in the partnership return.↩